Arguments not to exceed 15 minutes per side. Mr. Parson, if you would like to make some opening remarks. Good afternoon. Good afternoon. May it please the court. Colter Paulson from Squire Patton Boggs here on behalf of Dr. Sonja Williams. And today we have a 3L law student to argue before the court. Welcome to the 6th Circuit. Good afternoon, your honors. May it please the court. Mia Cordell for the University of Cincinnati 6th Circuit Clinic on behalf of Dr. Sonja Williams. I would like to reserve 3 minutes for rebuttal. Very well. Shelby County's failure to place Dr. Williams on a statutorily compliant reemployment list entitles Dr. Williams to recovery both under the Tenure Act itself and under Section 1983. Tennessee law requires that certain teachers whose positions are eliminated by a school district be placed on a formal list for reemployment. Dr. Williams was entitled to be placed on such a list when Shelby County eliminated her position in 2016. And Shelby County has yet to place Dr. Williams on a list that complies with these requirements. Dr. Williams lost a significant advantage in the reemployment process. And the Tenure Act created this mandatory list requirement for precisely that purpose. To provide teachers like Dr. Williams with heightened consideration and opportunities to find a job. The injury creates liability for Shelby County under the Tenure Act and under Section 1983. But first, Shelby County's liability begins by never placing Dr. Williams on a reemployment list that complies with Tennessee law. What do you do about Emory? Your Honor, Emory does not abrogate the Tennessee Supreme Court's decisions in Randall and Thompson for a couple of reasons. First, Emory dealt with a court of appeals who crafted a remedy that had no basis in the Tenure Act at all. In other words, the court of appeals created a remedy that was not contained in any provision of the Tenure Act. In contrast, the courts in Randall and Thompson applied the remedy contained in Section 511A3 of the Tenure Act. Full back pay to other provisions of the same Section 511 that dealt with termination for comparable violations. Thompson explained that the Tennessee General Assembly did not necessarily contemplate that a school district might violate every provision. So it extended the remedy in 511A3 to other parts of 511. Moreover, Emory did not overturn Randall and Thompson because Emory affirmed the basic premise of Thompson. If Emory wanted to overturn Thompson, it would have said so. Instead, Emory affirmed the principle of Thompson that the Tenure Act is intended to provide protection to teachers and preserve their rights. Under Tennessee law, because Thompson remains good law, Emory is best read to compliment Thompson to say that while Tennessee courts are not at liberty to craft remedies that have no basis in the Tenure Act, Tennessee courts may extend remedies contained in one section of the Tenure Act to other violations of that same section. However, if the legislature intended it, then why didn't it say so? Your Honor, in Thompson, the Tennessee Supreme Court explained that it had previously extended the remedy in 511A3 to other provisions of Section 511. And because the Tennessee legislature did not override this judicial interpretation, it interpreted the legislature's failure to override that interpretation as accepting that judicial interpretation. And so because Emory does not overturn Thompson and Randall, Randall plainly authorizes damages for someone in Dr. Williams' position because Shelby County has yet to place Dr. Williams on a reemployment list that complies with Tennessee law. From October of 2018 to January of 2019, Shelby County did not place Dr. Williams on any reemployment list. Then in January of 2019, Shelby County only placed Dr. Williams' name on a list that did not track reemployment. Every other person on the list at the time the list was created was presently employed in Shelby County or had already resigned when the list was created. Moreover, the notations next to Dr. Williams' name stated some awarded, indicating that she too was not looking for reemployment. So this list is the very opposite of a reemployment list because it is entirely a list of people, with the exception of Dr. Williams, that did not presently need a job. Moreover, as Jones explained in his deposition, this list was his personal Excel file that he used as a tracker to keep up with certain people that had nuances or special circumstances and was not intended to be readily available to be disseminated to those looking to hire. In his deposition, he repeatedly stated that this list was not a reemployment list and that there is no reemployment list. For example, on page ID 4197, stating it's not a reemployment list per se. On page ID 4200, stating for the last two years we've not ripped anyone, so there's no need to maintain a reemployment list. On page ID 4206, that's just my list of names, but if I were to have a reemployment list, and so on. At trial, Jones stated again that this was just a list of individuals that he kept that needed to be reemployed. This list... Wait. If it's a list of employees that he kept that needed to be reemployed, why isn't that a reemployment list? I'm sorry. I'm sorry, Your Honor. I meant that this is a list of individuals that he kept that had special circumstances. But all of those people were currently employed in Shelby County Schools. This list is the very opposite of a reemployment list. It in no way indicates that Dr. Williams or any other teacher on that list sought reemployment. It was not formal or readily available for those seeking to fill vacancies. Therefore, it does not qualify as a reemployment list, and Shelby County has not complied with the Tenure Act to this day. Shelby County's failure to place Dr. Williams on a statutorily compliant reemployment list deprived Dr. Williams the statutory priority to which she is entitled. Randall plainly authorizes damages for this violation in neither the 2014 amendment to the Tenure Act or, as we've already discussed, the Tennessee Supreme Court's decision in Emory changed this result. The 2014 amendment to the Tenure Act continues to implement a preferred list for reemployment for teachers in Dr. Williams' position. This means that Dr. Williams is entitled to certain statutory priority over teachers that are not entitled to be placed on this list. Does that create an entitlement to employment? No, Your Honor. It does not create an entitlement to employment, but it does create certain advantages in the reemployment process. For example, the Tennessee Department of Education has explained that school districts like Shelby County should first consider teachers on the reemployment list before considering other teachers. Similarly, Shelby County's own practice is to make sure that teachers on the reemployment list get special attention, are granted interviews, are invited to job fairs, and other things of that nature. And so... Discretion on the part of the employer here? Yes. So the Tenure Act specifically provides that a principal is not required to hire a teacher on the list, but as explained in Randall, as Randall affirmed that award of damages, because the violation is the school district's failure to place the teacher on the reemployment list at all. And so it doesn't matter whether that teacher would get rehired. The preference that she's entitled to because of, by being placed on the reemployment list, denial of that grounds for an award of damages. How would you measure your damages? So under the Tenure Act claim, Dr. Williams is entitled to full back pay, as provided in Section 511A3 of the Tenure Act and confirmed by the Tennessee Supreme Court's decision in Randall, because she has not been placed on a reemployment list that complies with the Tenure Act. It doesn't matter whether she's been rehired or whether there's a guarantee of being rehired. There wasn't a guarantee of those teachers being reemployed in Randall or in Lee, and those teachers were still awarded damages for the violation of the Tenure Act. So even if... Let's say we accept the position that they don't have a list because it's a long list and there are no open positions. So even if no one was hired during that interim period, she still gets back pay? Yes, Your Honor, because Dr. Williams is entitled to be placed on a reemployment list. So she's entitled to be placed on a reemployment list. For example, in the event a position opens, she should be on that reemployment list. Because Dr. Williams was not placed on a reemployment list consistent with Tennessee law, Shelby County's violation of the Tenure Act is sufficient to award a justification of back pay. Moreover, Shelby County's failure to place Dr. Williams on this reemployment list as required by the Tenure Act deprived Dr. Williams of her rights under the Tenure Act, causing her a significant disadvantage in the reemployment process, which entitles her to relief under Section 1983. The district court below already found that Dr. Williams has a constitutionally protected property interest in placement on the reemployment list. So all that remains is whether Shelby County acted under color of state law to deprive Dr. Williams of her rights and whether Dr. Williams suffered damages. And again, how do you calculate those damages, the due process violation damages? So, Your Honor, Dr. Williams is entitled to presumed damages under this circuit's precedent in King. The purpose of the reemployment list is to give teachers increased visibility and consideration in the reemployment process. And while certainly the reemployment list does not guarantee that that teacher is placed in a new position or is reemployed, it should at least increase the teacher's chances of being employed. And so, for example, Dr. Williams applied for dozens and dozens of jobs and didn't receive a single interview. She clearly did not reap the benefits of being placed on the reemployment list. And so under the circuit's precedent in King, presumed damages here are appropriate where Dr. Williams has been injured, but it's difficult to measure. And Dr. Williams, we are asking for a remand to the district court to determine the amount of damages she's entitled to under Section 1983. But Dr. Williams is entitled to damages both because Shelby County acted under color of state law through Dr. Hobson as final policymaker and because Shelby County had a custom or policy of noncompliance with the Tenure Act. Dr. Hobson acted as final policymaker for Shelby County with regards to the reemployment list. Shelby County's explicit written policy was that the superintendent was to develop, implement, and ensure that the preferred list for reemployment policy was followed. In his deposition, Dr. Hobson testified that he had human resources vet and keep the reemployment list at his direction. Dr. Hobson's direction was not to implement a reemployment list because Shelby County didn't have the vacancies he needed. That's one of the problems I have with the 1983 claim. Normally in 1983 claims, individuals are sued along with the government entity because the government entity has no vicarious liability. So individuals are normally named. And here you said the superintendent, Hobson, did not comply with their policy. Well, I think there might be a claim against Hobson, but unless the government entity, unless the liability is because of a policy, custom, or practice by the government entity, then they're not liable. And isn't that a problem here with the 1983 claim? No, Your Honor, because Shelby County tasked Dr. Hobson with developing the reemployment list policy. But if he doesn't do what he's told to do, the government entity is still liable? The government here, Your Honor, the government entity is still liable because they tasked Dr. Hobson with developing the policy. And the policy he chose to implement was to not maintain a reemployment list for a few years because he determined that Shelby County didn't have the vacancies to fill that it needed. And so here he chose, as this circuit noted, explained in George, he as final policymaker chose from among various alternatives. And the alternative he chose was not to maintain a reemployment list. Thank you. So, but you're emphasizing final policymaker. Yes, Your Honor. Not that he, it's not simply that he was delegated that responsibility. There's a big difference there. If he's in charge of making policy, then it's the policy of the board as opposed to he doesn't implement the policy. Yes, yes, Your Honor. So this is actually similar to this circuit's decision in George where the court distinguished between a policymaker and a fact finder explaining that the policymaker is the one that has the authority or has been given the authority to make a final decision. Okay, but what did the trial court do in its findings of fact as to that? Did the trial court rule that the superintendent was not the policymaker? Or what was the ruling there? The district court, Your Honor, the district court below ruled that Dr. Williams presented no evidence that Dr. Hopson was final policymaker. Okay, isn't that significant? Yes, Your Honor. But the evidence demonstrates that the evidence Dr. Williams presented, that Shelby County specifically stated that Dr. Hobson was to develop the final policy, clearly demonstrates that Dr. Hobson was the final policymaker with regards to the 1983 claim. So you're saying that the court as a matter of law should have decided that? Yes, Your Honor. The court as a matter of law erred when it determined Dr. Hobson was not final policymaker. Is that a factual question or is it a legal question? It's a legal question, Your Honor, because the district court determined that based on the law, no evidence supported that Dr. Hobson was final policymaker. If there are no further questions, I reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you. Good afternoon. Good afternoon, Your Honors. Jamie Morton for Shelby County Board of Education. Okay, so the primary issue that we are focusing here is clearly the reemployment list. The plaintiff, Dr. Williams, has already been awarded back pay through her termination through October 30, 2018, when her termination was ratified by the board pursuant to the Kellett case. So the first point here with respect to the Tennessee Tenure Act statutory requirement with regard to the reemployment list. So federal courts, of course, are directed on a state court claim like this to predict or make a decision that is consistent with what the Tennessee Supreme Court would do. So the first thing that we're looking at is the actual statute. The first thing that's important here is that the statute was amended in 2011, and the old version of the statute, and the one that's been cited by appellants here, is that a tenured teacher who's been dismissed because of an abolition of a position shall be placed on a preferred list for reemployment in the first vacancy the teacher is qualified by training and experience to fill. So not only does the old version of the statute recognize that the reemployment list is a, quote-unquote, preferred reemployment list, but also it gives some direction as to how that list is supposed to be used. So it requires that the teacher that's on the reemployment list, the preferred reemployment list, be placed in the first vacancy by which the teacher is qualified by training and experience to fill. Now, when the statute was amended, it looks like actually in 2014, the word preferred has been removed, but also it no longer says that the teacher must be placed in the first position which they're qualified by experience and qualifications to fill. So the legislature, the Tennessee General Assembly, in 2014 made a deliberate decision to change the requirements of that reemployment list. So what the statute says now is that someone, a tenured teacher who loses their position because that position is abolished, should be placed on a reemployment list, but it gives no direction or requirements as far as how that list is supposed to be used. Although it does still say that the district maintains the authority to determine whether a person is a good fit for a position. So that's the backdrop. Now, both Randall and Lee, the two cases relied upon primarily by Dr. Williams, were prior to that change. So if we are looking at what we think the Tennessee Supreme Court would do in terms of creating a remedy for a violation of the reemployment list provision. So the first thing is, we would argue, Shelby County Board of Education argues that there's no violation of the statute because the statute requires that she be put on a list, but it does not require that she be given the first position that she's qualified for. I'm sorry, but it requires that she be placed on the list. Yes, and at trial, Mr. Jones testified at trial that he was never aware of a time that the district did not have a reemployment list. So his actual testimony was that there was a list. Now, another thing that's absent from the statute. When was she placed on the list? The trial court did not make a decision. The trial court's decision is that she was placed on the list sometime after January of 2019, which was about three months after her dismissal. They're late, and even if that's true, they're late in putting on their list. So theoretically, she's entitled to damages for that period, right? Well, so that's the issue, is that if we look at how the Supreme Court, the Tennessee Supreme Court has looked at damages in things besides just someone is terminated or wrongfully discharged. So when we go back to Randall, Randall is a Tennessee Supreme Court case. This case was, there's a distinction, I think, between a case about failure to put on the list and failure to award and afford the statutory priority that is required on the list. So, of course, under Randall, the case is not about was she put on a list or was she not. The Randall case is about was that teacher afforded the preference that she was entitled to because she was on the list. In that case, she had, the claim was put on proof that they had sought reemployment with the district, but that other people had been hired. Now, the Randall case, the Randall court, the Tennessee Supreme Court, does not directly consider the question of whether back pay is available for a violation of the reemployment list provision, for violation of affording the statutory preference. The Court of Appeals, the Court of Appeals did apply the same type of damages under A3, but the Supreme Court noted that the Board of Education had not raised any issues regarding that. So, while I understand that there might be an argument that the Supreme Court in Randall implicitly approved the measure of damages awarded by the Court of Appeals, it was not before the Tennessee Supreme Court in that instance. That case is also from 1987, which is many, many years ago, many, many years before the national teacher shortage, very different circumstance then, and most importantly, prior to the Tenure Act being amended in 2014 by the General Assembly. We cannot ignore what the General Assembly, the change that they did. Dr. Williams argues that they were just simply trying to clean it up, but there's absolutely no evidence of that, and they took out substantial, important language related to the requirements of the list and how the list was to be used. So, Randall then, while, again, maybe implicitly accepted what the Court of Appeals had done, it expressly said that this is not before it. The Board of Education has not argued that there should have been no back pay for this violation. So that case does not stand for the proposition that a court can apply the measure of damages from A3 to another violation of the statute. In Lee, we have in 2007, this is a Court of Appeals case. This is not a Tennessee Supreme Court case. That court did, of course, also award damages in a similar way for back pay. But, again, that case was about the failure to award the preference guaranteed by the version of the statute at that time and not about the failure to put an employee on the list. There was also evidence and proof in that case that every position for which Ms. Lee, the plaintiff in that case, interviewed, was filled by an applicant who was not on the list. So, a lot more information about who they applied for, what they applied for, and who was actually given the position. So, Lee then, that's the Court of Appeals. So that takes us to Emory. And Emory is very clear with its warning that the court system is not entitled to create remedies for statutory violations for which there is no express remedy. Dr. Williams makes much of the Thompson case, but the Thompson case is not about the re-employment list. The Thompson case is about constructive discharge. It's still about termination and violation of the Tenure Act. That part of this case has already been handled. She's already been given a judgment for the initial violation of the Tenure Act in terms of having the board ratify her dismissal. So, at this point, Emory is very careful that we are not supposed to do that, to create remedies for statutory violations that aren't afforded remedies by the General Assembly. Thompson, while it may have done something similar, the Thompson case, we are still talking about someone who is tenured, someone who is entitled to employment, whose employment was taken away from them. So, we're talking about something that is much more similar to failing to terminating someone without a hearing. It's much, much more similar to that because that teacher says she was encouraged to resign and basically constructive discharge. So, in Thompson, what they're doing is they're equating remedy from another discharge provision to this discharge, this type of discharge, constructive discharge under that case. That is very, very different than looking to a remedy for someone who has been terminated or lost their employment, not been able to be employed by some action of the board. That is very different than a case where the allegation is that she was put on the list late, especially where there's been no proof that she was not actually afforded any preference in any job that she applied for after 2018. Actually, she testified at trial that she did not see any teacher positions, classroom positions available between that time. So, the trial testimony, you know, at best indicates that she did not actually apply for classroom teaching positions following her termination on October 30, 2018. So, if we're looking at what the Tennessee Supreme Court would do here, Thompson is not helpful. Emory is much more close because in Emory, there is a different, in Emory, the plaintiff was not given a timely hearing. Her hearing was late. And so, what the Court of Appeals did is say, okay, well, she was not employed for a little bit longer until she had the opportunity to have her hearing. So, we're going to give her back pay for that period of time. And even that is more closely related to what back pay is intended to rectify than what we have here. Back pay, regardless of the type of employment action, is intended to compensate a plaintiff for pay that they should have received while they were legally employed if their employment was terminated or suspended or they were, for some reason, not permitted to do a job they were already entitled to have. This is just very, very different. The statute itself and all the courts have been very clear that an employment on the re-employment list is not entitled to re-employment itself. So, when we're calculating damages, we would be compensating someone for a job that they were never entitled to or that they have not proven that they were qualified for or that a statutory preference would have required them to be given that job. That's just not what we have here in this case. Essentially, you're saying being put on the re-employment list doesn't entitle you to anything. In the prior version of the statute, before it was amended in 2014, the statute was very clear that what it entitled an employee to was to be placed in the first available vacancy for which they were qualified by experience and certification to take. So, in the prior statute, I think it was very clear. But, in 2014, the General Assembly removed all of that language. So, any language in there that entitled someone to actually be chosen over someone else who is also qualified or more qualified under the pre-2014 is just not true anymore. So, while the statute is not clear as to what exactly the preferred list would be, it is clear from the trial testimony that she was put on a list of people that were looking for re-employment. So, it is, I think the entitlement at least is that they be considered for an interview. But, the statute is not clear. So, what's the point of the list? Well, I think that's a great question for the Tennessee General Assembly. I think what we are left here to do is to do our best to interpret it the way that we believe the Tennessee Supreme Court would do and to speculate as to what the purpose of the list is. I think that the list would be to remind people that are choosing that these teachers are looking for re-employment and to consult the list and to the extent that they can do so consistently with the statute's mandate that the school board be entitled to put the best people in the best places for the benefit of the student, that they would at least consider someone on the re-employment list for one of those positions. But, the courts have been clear that being on the list, even in the prior version, that was very clear about what the preference meant, were not entitled to employment. And, the cases that we've been looking at were situations where the plaintiffs alleged that they were not afforded the preference that was required by the statute. And, that's just not what we have here. The complaint doesn't even allege that she was not entitled preference based on the re-employment list. So, we're just talking about a different claim and then put that also in the context with Emory and the revised statute. There's just no reason, no legal support for the idea that she would be entitled to back pay even if she was not put on the re-employment list. Why did you pay her? I'm sorry, what? Why did you pay her? You mean the award of back pay that's already happened? That was, we were, the trial court found that the Board of Education had violated the Tenure Act in terminating her employment without following the procedures under the Tenure Act, which required the board, as opposed to, you know, just simply the superintendent, to do the dismissal. So, on October 30th of 2018, when the board ratified the dismissal as provided under Kelly, that ended her damages, but there was a violation and we paid that money into court. Your position, she's entitled to back pay for that period of time? I mean, I know it's not subject to this appeal, but it seems inconsistent with your position today. Under the, I don't think it's inconsistent at all because I think the position today is, we're talking about two different violations. So, under the... There's no remedy at all. I don't know why the decision of the board to formalize the termination makes any difference. It's basically, I don't know if this is the argument, but she was effectively employed that whole time because she wasn't... Is that it? Right. That is right. Yes, that's exactly right. It had to be done by the board for it to be effective. I know your time's up, but I've got a question on the 1983 claim. The district court ruled there was no injury. This is a procedural due process, 1983 claim, but the district court ruled there was no injury because there were no actual damages. Hasn't the Supreme Court recognized since 1978 in the Carey case that for procedural due process you need not prove an actual injury, that nominal damages are sufficient? And if so, isn't that a basis to reverse the district court? So, two things. I think the most important part about the 1983 claim and our most significant argument is simply that there's no Monell liability, that we have decisions made by individuals, but there's no custom policy practice. That's a question I have too, yeah. But how about, Monell's a different question. How about damages? I mean, you cite 1983 cases that are not procedural due process cases to say that you need an actual injury. And those cases are correct, and that is the law. But procedural due process is different, I understand it, and the Supreme Court has ruled for procedural due process. You don't have to have an actual injury. Do you dispute that? No, I don't, Your Honor. I think the issue here is in addition to damages, I think there's also a causation problem as well. There's no proof that links, regardless of whether there are nominal damages or financial damages, there's no proof at trial that linked any decision made by the district based on a pattern or practice to any damages that she had. So I think it would be different if damages were difficult to calculate or that she could prove that, you know, something, that she lost something by virtue of what the school board did. But I think it's the causal. Even if there's nominal damages awardable, there's no causation. Okay, I'll ask the other side. Any further questions? So the present statute, doesn't it still refer to a preferred list? It does in the second subsection. And so the first point would be that, you know, we don't, they removed that word from one subsection, they left it in the second subsection. I'm trying to decide why the General Assembly might have done that. I'm not sure. But I think what is more important than that is to know that it is not just the word that was removed, preferred, but also the following language that actually said what preferred meant. So my best speculation would be that there was an oversight in leaving preferred in the second paragraph, but I don't know that we can assume that. So I think we also have to look at the other significant language that was removed. No, I guess not. Thank you, Your Honors. Thank you, Counselor. All right, three minutes rebuttal. Thank you, Your Honors. Your Honors, this case comes down to whether Emory overruled Thompson and whether Dr. Williams is entitled, still entitled to preference under the current version of the Tenure Act. First, Emory did not overrule Thompson, and so Thompson and its predecessors remain good law. As counsel noted, this circuit is bound to apply Tennessee law the way that the Tennessee courts would. And the district court below actually certified these questions to the Tennessee Supreme Court, and they declined to answer these questions. So we're left with what remains as good Tennessee law to apply to this case. Emory did not overturn Thompson because Emory dealt with a procedural violation in a different subsection of the Tenure Act that didn't result in prejudice, whereas in Thompson a teacher was terminated in violation of Section 511A where there was no cause listed for her termination. So there's five ways a tenured teacher can be terminated under Tennessee law, and she was terminated for none of those reasons. And so the court in Thompson extended the remedy in Section 511A-3 to that violation in an earlier section of 511. Similarly, this circuit in Kelly affirmed the extension of the district court's application of the remedy in Section 511A-3 to ratifying the terminations that were not in compliance because the terminations in Shelby County were terminated without board approval. And so because there's no prejudice in Emory, Emory can easily be distinguished from Thompson and both remain good law and should be applied complementary. Moreover, there is still preference under the 2014 version of the Tenure Act. The preferred list for reemployment is still described in the Tenure Act as a preferred list for reemployment, and the change that changes the way principals consider teachers in this list for reemployment is not different, not meaningfully different, than under prior versions of the statute because under prior versions of the statute, the principals still had discretion to determine whether that teacher was qualified or was fit to fill a vacancy. And as the courts noted in Randall and in Lee, principals were in no way required to hire a teacher, and still had discretion to determine whether to hire that teacher. So because Emory has not been overturned and because Dr. Williams is still entitled to preference under the 2014 version of the Tenure Act, Shelby County is liable to damages for her. I have one question. If I'm not mistaken, your client proceeded pro se at first? Yes, Your Honor. She proceeded pro se at trial on her 1983 claim. But she filed a brief here too, right? Yes. And then you were appointed? Yes, Your Honor. Should we just be looking at your brief? Are you adopting any of her arguments? No, Your Honor, just our briefs. Thank you. Okay. 1983, I'm still interested on that. Okay. And they seem to concede that nominal damages are awardable under a procedural due process claim. Yes, Your Honor. And the district court said, no, you have to have actual injury. But today they argued, well, there's no proximate cause. There's no causation. Can you address that? Yes, Your Honor. So there is a direct cause here between Shelby County's actions, both through its custom of noncompliance with the Tenure Act, which I did not address before, and through Dr. Hobson as final policymaker. So under either theory of liability, Shelby County's reemployment list did not operate as intended, and so that deprived Dr. Williams of meaningful advantage in the reemployment process. So the failure to maintain a reemployment list is that direct causal link to Dr. Williams' deprivation of the advantage she's entitled to in the reemployment process because of the list. All right. Thank you. Thank you. Any further questions, Judge Batchelor, Judge White? All right. Thank you. Thank you, Your Honors. Very good job representing your client. Thank you for your arguments. Sure. Have the parties engaged in mediation previously in this case? Not since it's been on appeal. Not since? Okay. We have a mediation office here. Would it be – do you think it may be any benefit if we were to refer it to mediation office? Plain and simple. It may? How about the defense? In – I think it's unlikely, but not something we would argue with the court about if the court found it valuable. All right. Kind of ambivalent to it. All right. All right. Thank you very much, and thank you for your argument. The case will be submitted.